# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

|  |  |  |
|---|---|---|
| **SOVEREIGN PEAK VENTURES, LLC,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **v.** | § | |
| | § | |
| **HP INC.,** | § | **C.A. NO. 6:22-cv-919** |
| | § | |
| **Defendant.** | § | |
| | § | |
| | § | |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Sovereign Peak Ventures, LLC ("SPV") files this Complaint against Defendant

HP Inc. ("Defendant" or "HP") for infringement of U.S. Patent No. 8,902,871 (the "'871

patent"), U.S. Patent No. 9,357,441 (the "'441 patent"), and U.S. Patent No. 10,039,144 (the "'144

patent"), collectively, the "Asserted Patents."

## THE PARTIES

1.      Sovereign Peak Ventures, LLC is a Texas limited liability company, with a

principal place of business in Allen, TX.

2.      On information and belief, Defendant HP, Inc. ("HP") is a Delaware corporation

with a principal place of business at 1501 Page Mill Road, Palo Alto, California 94304. HP is

registered with the Texas Secretary of State to do business in Texas. HP can be served through its

registered agent, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

3.      HP is a multinational information technology company and develops and sells

personal computers and related supplies. HP sells its products to customers, including customers

in this District, in the computer and consumer electronics markets.

4.      HP maintains one or more offices within this District, including at 3800 Quick Hill Rd. #100, Austin, Texas 78728.

5.      HP operates and owns the hp.com website, and markets, offers, distributes, and provides technical support for its computer products throughout the United States including in this District.

6.      HP develops, designs, manufactures, distributes, markets, offers to sell, and/or sells infringing products and services within the United States, including in this District, and otherwise purposefully directs infringing activities to this District in connection with its Austin, Texas office; its hp.com website; and its other places of business in Texas and the rest of the United States. Defendant participates in the design, development, manufacture, sale for importation into the United States, offers for sale for importation into the United States, importation into the United States, sale within the United States after importation, and offers for sale within the United States after importation, of computers that infringe the Asserted Patents.

7.      On information and belief, Defendant is engaged in making, using, selling, offering for sale, and/or importing, and/or inducing its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, products, such as computers, accused of infringement.

8.      The Asserted Patents were invented by employees of Panasonic Corporation ("Panasonic"). Founded in 1918, Panasonic has been at the forefront of the electronics industry for over a century. Panasonic made numerous innovations in the home appliance, battery, mobile phone, and television industries. Indeed, Panasonic's invention of the "Paper Battery" in 1979 is widely credited as enabling the compact electronics of today. In 1991, Panasonic released the Mova P, the smallest and lightest mobile phone on the market, which revolutionized the industry

by showing the demand for a compact, lightweight device. Panasonic also produced the first wide-format plasma display and developed the first digital television for the U.S. market. Panasonic's history of innovation is also borne out by its intellectual property. Indeed, a search of the USPTO database where the patent assignee is "Panasonic" yields over 27,000 matches.

9.      Prior to the filing of the Complaint, SPV attempted to engage HP and/or its agents in good faith licensing discussions related to the Asserted Patents, including by providing HP with access to a data room on September 21, 2021, that contained claim charts detailing HP's use of the Asserted Patents.  At least HP's Deputy General Counsel and Chief of Intellectual Property and its Associate General Counsel received access to the data room.  In October 2021, HP and SPV held technical and licensing discussions. Thereafter, at HP's request, SPV sent on November 3, 2021, technical information in response to HP's questions and in support of SPV's infringement allegations. A second technical and licensing discussion was held on March 6, 2022.During the initial October 28, 2021, discussion SPV provided a non-discriminatory offer to HP to license its portfolio on a worldwide basis, including both implementation and any standards-essential patents in the portfolio, that was reasonable for a license taken in the absence of litigation.  Following the second March 6, 2022, meeting HP refused to engage with SPV or respond to SPV's repeated requests to continue the licensing discussions, thus necessitating litigation. HP's past and continuing sales of its devices i) willfully infringe the Asserted Patents and ii) impermissibly take the significant benefits of SPV's patented technologies without fair compensation to SPV.

10.      Through offers to sell, sales, imports, distributions, and other related agreements to transfer ownership of Defendant's electronics, such as computers, with distributors and customers operating in and maintaining a significant business presence in the U.S. and/or its U.S. subsidiaries Defendants does business in the U.S., the state of Texas, and in this District.

## JURISDICTION AND VENUE

11.     This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

13.     This Court has personal jurisdiction over HP in accordance with due process and/or the Texas Long Arm Statute because, in part, HP "recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state." TEX. CIV. PRAC. & REM. CODE § 17.042(3).

14.     This Court has personal jurisdiction over HP because HP has engaged, and continues to engage in continuous, systematic, and substantial activities within this State, including the substantial marketing and sale of products within this State and this District. Furthermore, upon information and belief, this Court has personal jurisdiction over HP because HP has committed acts giving rise to SPV's claims for patent infringement within and directed to this District.

15.     For example, HP is subject to personal jurisdiction in this Court because, *inter alia*, it has regular and established places of business in this District, including offices and data centers located at 3800 Quick Hill Rd. #100, Austin, Texas 78728. The Travis County Central Appraisal District (CAD) website indicates that HP owns several other offices and properties in Austin including properties at 7501 N. Capital of Texas Highway, TX 78731; 3301 Hibbets Rd, Austin, TX 78721; 14231 Tandem Blvd, Austin, TX 78728; and 14219 Tandem Blvd, Austin, TX 78728.

16.     HP's Austin offices are regular and established places of business at least because these locations include many members of HP's important teams, including Process and

Capabilities   Manager,   Information   Systems   Architect,   Software   Engineers,   IT
Developers/Engineers, and Technical Engineers.

17.     HP's website lists over ninety H-1B labor condition applications for people
employed in Austin, Texas. Employees holding an H-1B visa are employed in a specialty
occupation that requires "theoretical and practical application of a body of highly specialized
knowledge . . . and attainment of a bachelor's or higher degree in the specific specialty… ." See 8
U.S.C. § 1184. HP employees in Austin, Texas are highly specialized and are important to the
operation of HP.

18.     HP posts job openings for its Austin office, as well as, openings for other cities
within this District, such as Waco.

19.     HP, directly and through its agents, regularly conducts, solicits, and transacts
business in this District and elsewhere in Texas, including through its hp.com website. For
example, HP employs sales and marketing employees that regularly sell, offer to sell, or otherwise
distribute personal computers in this District and elsewhere in Texas.

20.     HP has committed and continues to commit acts of infringement in violation of 35
U.S.C. § 271, and has made, used, marketed, distributed, offered for sale, and sold infringing
products in Texas, including in this District, and engaged in infringing conduct within and directed
at or from this District. The infringing computer products have been and continue to be distributed
to and used in this District. HP's acts cause injury to SPV, including injury suffered within this
District.

21.     Moreover, on information and belief, HP has previously litigated patent
infringement cases before this Court without contesting jurisdiction and venue.

22.     Exercising personal jurisdiction over HP in this District would not be unreasonable given Defendants' contacts in this District, the interest in this District of resolving disputes related to products sold herein, and the harm that would occur to SPV.

23.     In addition, HP has knowingly induced and continues to knowingly induce infringement within this District by advertising, marketing, offering for sale and/or selling devices pre-loaded with infringing functionality within this District, to consumers, customers, manufacturers, distributors, resellers, partners, and/or end users, and providing instructions, user manuals, advertising, and/or marketing materials which facilitate, direct or encourage the use of infringing functionality with knowledge thereof.

24.     Personal jurisdiction also exists specifically over HP because it, directly or through affiliates, subsidiaries, agents, or intermediaries, transacts business in this State or purposefully directed at this State (including, without limitation, retail stores including Best Buy and Walmart) by making, importing, offering to sell, selling, and/or having sold infringing products within this State and District or purposefully directed at this State or District.

25.     Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because HP has committed acts of infringement in this District and have a regular and established place of business in this District.

26.     With respect to the '871 patent, '441 patent, and '144 patent, the Accused Products are devices that support Wi-Fi Direct, including, but not limited to, Defendant's mobile phones, tablets, laptops, and computers, as well as, their components, and processes related to the same. Such devices include the following products (and, where indicated, product model): HP ScanJet Enterprise Flow N7000 snw1, HP LaserJet Pro MFP 4101fdw, HP ENVY 6400 Pro All-in-One

Printer series, HP OfficeJet Pro 9020 All-in-One series, HP Smart Tank 7000 series, HP Deskjet 2700 All-in-One Printer series, HP LaserJet MFP M141w, HP DeskJet 4100e All-in-One Printer series, and HP Color LaserJet Pro M255dw.

27.     On information and belief, HP has placed and continues to place infringing products and/or products that practice infringing processes into the stream of commerce via established distribution channels comprising at least distributors and customers such as Walmart, Best Buy, and Amazon, with the knowledge and/or intent that those products are and/or will be imported, used, offered for sale, sold, and continue to be sold in the United States and Texas, including in this judicial district. As a result, HP has, vicariously through and/or in concert with its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers, placed the Accused Products into the stream of commerce via established distribution channels with the knowledge and/or intent that those products were sold and continue to be sold in the United States and Texas, including in this judicial district.

## **COUNT I**
### (INFRINGEMENT OF U.S. PATENT NO. 8,902,871)

28.     Plaintiff incorporates paragraphs 1 through 27 herein by reference.

29.     SPV is the assignee of the '871 patent, entitled "Wireless Base Station and Wireless Communication Terminal and Wireless Communication System," with ownership of all substantial rights in the '871 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

30.     The '871 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '871 patent issued from U.S. Patent Application No. 13/607,931.

31.     HP has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '871 patent in this judicial district and elsewhere in Texas and the United States.

32.     On information and belief, HP designs, develops, manufactures, assembles and markets mobile phones, tablets, laptops, computers, and other devices that support Wi-Fi Direct.

33.     HP directly infringes the '871 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '871 patent.

34.     For example, HP infringes claim 1 of the '871 patent via the Accused Products. The Accused Products comprise "a wireless base station connected to a wireless communication terminal" of claim 1. For example, in Wi-Fi Direct, each Accused Product is configured to function as a wireless base station connected to a wireless communication terminal (e.g., a second device with Wi-Fi Direct capability).

35.     The Accused Products include a wireless communication section (e.g., a Wi-Fi module) that communicates with the wireless communication terminal in accordance with a predetermined communication method (e.g., the Wi-Fi Direct protocols).

36.     The Accused Products include a control section (e.g., Wi-Fi module processor) that controls the wireless communication section. The control section controls the wireless communication section to establish a connection with the wireless communication terminal by using (i) a first connection which does not require an authentication procedure for connection with the wireless communication terminal, or (ii) a second connection which requires the authentication procedure for connection with the wireless communication terminal.

37.     A first wireless communication section (e.g., Wi-Fi module) of the Accused Products is configured to communicate with the wireless communication terminal in accordance with a first wireless communication method (e.g., IEEE 802.11).

38.     The second wireless communication section (e.g., Wi-Fi module) of the Accused Products is configured to communicate with the wireless communication terminal in accordance with a second wireless communication method (e.g., P2P protocol described in the "Wi-Fi Peer-to-Peer (P2P) Technical Specification").

39.     Prior to the first wireless communication section starting communication with the wireless communication terminal, the control section in the Accused Products controls the second wireless communication section, and transmits, to the wireless communication terminal, profile information that is necessary for the first wireless communication section to communicate with the wireless communication terminal. For example, the Accused Products transmit to another Wi-Fi Direct peer device, via the second method (e.g., P2P protocol), profile information (e.g., operating channel attributes) necessary for the devices to communicate via the first method (e.g., IEEE 802.11).

40.     The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations.

41.     At a minimum, HP has known of the '871 patent at least as early as the filing date of the complaint. In addition, HP has known about the '871 patent at least as early as October 28, 2021, when it met with SPV to discuss the patents-in-suit. Further, HP has known about the '871 patent since at least September 21, 2021, when HP acknowledged access to a data room providing notice of its infringement. Moreover, HP has been on notice of the '871 patent as a result of

previous lawsuits filed by the Plaintiff against competitors of HP and other relevant market participants, such as TCL, Hisense, Acer, ASUS, and LG.

42.     On information and belief, since at least the above-mentioned date when HP was on notice of its infringement, HP has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '871 patent to directly infringe one or more claims of the '871 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, HP does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '871 patent. HP intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to Wi-Fi Direct in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States.

43.     In the alternative, on information and belief, since at least the above-mentioned date when HP was on notice of its infringement, HP has contributorily infringed, under U.S.C. § 271(c), one or more claims of the '871 patent. For example, HP contributes to the direct infringement of such claims by distributors, customers, subsidiaries, importers, and/or consumers that use, import, purchase, or sell the Accused Products. To the extent that the Accused Products

do not directly infringe one or more claims of the '871 patent, such products contain instructions, such as source code, that are especially adapted to cause the Accused Products to operate in an infringing manner. Such instructions are specifically designed to cause the Accused Products to connect with another device using Wi-Fi Direct protocols in an infringing manner and are a material part of the invention of the '871 patent and are not a staple article of commerce suitable for substantial non-infringing use.

44.     On information and belief, despite having knowledge of the '871 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '871 patent, HP has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. HP's infringing activities relative to the '871 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

45.     SPV has been damaged as a result of HP's infringing conduct described in this Count. HP is, thus, liable to SPV in an amount that adequately compensates SPV for HP's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II
### (INFRINGEMENT OF U.S. PATENT NO. 9,357,441)

46.     Plaintiff incorporates paragraphs 1 through 45 herein by reference.

47.     SPV is the assignee of the '441 patent, entitled "Wireless Base Station and Wireless Communication Terminal and Wireless Communication System," with ownership of

all substantial rights in the '441 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

48. The '441 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '441 patent issued from U.S. Patent Application No. 14/747,164.

49. HP has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '441 patent in this judicial district and elsewhere in Texas and the United States.

50. On information and belief, HP designs, develops, manufactures, assembles and markets mobile phones, tablets, laptops, computers, and other devices that support Wi-Fi Direct.

51. HP directly infringes the '441 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '441 patent.

52. For example, HP infringes claim 1 of the '441 patent via the Accused Products. The Accused Products comprise the "wireless communication terminal" of claim 1. For example, the Accused Products connect to Wi-Fi and support Wi-Fi Direct. In Wi-Fi Direct, each Accused Product is enabled to function as a communication terminal that communicates with another device (e.g., another device with Wi-Fi Direct capability) that is enabled to function as a base station.

53. The Accused Products comprise wireless communication circuitry operative to communicate with a wireless base station by using (i) a non-authentication connection which does not require an authentication procedure for connection with the wireless base station, or (ii) an authentication connection which requires the authentication procedure for connection with the

wireless base station. For example, in the Accused Products (i.e., a Wi-Fi Direct peer), the communication terminal has wireless communication circuitry (e.g., Wi-Fi module) that communicates with another Wi-Fi Direct peer (i.e., the base station). The communication terminal establishes a connection with the base station using a connection that does not require authentication or a connection that does require authentication.

54.     The Accused Products comprise control circuitry operative to receive, by using the wireless communication circuitry, communication channel information from the wireless base station with a first communication method prior to the authentication connection starting with a second communication method, the communication channel information being necessary for the second communication method to select a communication channel for communicating with the wireless base station. In the Accused Products, the communication terminal has control circuitry (e.g., Wi-Fi module processor) that controls the wireless communication circuitry. The communication terminal (functioning as a Wi-Fi Direct peer device) receives from the base station (e.g., another Wi-Fi Direct peer device), via the first method (e.g., P2P), communication channel information (e.g., channel list and operating channel attributes) necessary for the devices to communicate via the second method (e.g., IEEE 802.11). The control circuity receives the communication channel information prior to the authentication connection starting with a second communication method.

55.     The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations.

56.     At a minimum, HP has known of the '441 patent at least as early as the filing date of the complaint. In addition, HP has known about the '441 patent at least as early as October 28, 2021, when it met with SPV to discuss the patents-in-suit. Further, HP has known about the '441

patent since at least September 21, 2021, when HP acknowledged access to a data room providing notice of its infringement. Moreover, HP has been on notice of the '441 patent as a result of previous lawsuits filed by the Plaintiff against competitors of HP and other relevant market participants, such as TCL, Hisense, Acer, ASUS, and LG.

57.     On information and belief, since at least the above-mentioned date when HP was on notice of its infringement, HP has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '441 patent to directly infringe one or more claims of the '441 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, HP does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '441 patent. HP intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to Wi-Fi Direct in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States.

58.     In the alternative, on information and belief, since at least the above-mentioned date when HP was on notice of its infringement, HP has contributorily infringed, under U.S.C. § 271(c), one or more claims of the '441 patent. For example, HP contributes to the direct

infringement of such claims by distributors, customers, subsidiaries, importers, and/or consumers that use, import, purchase, or sell the Accused Products. To the extent that the Accused Products do not directly infringe one or more claims of the '441 patent, such products contain instructions, such as source code, that are especially adapted to cause the Accused Products to operate in an infringing manner. Such instructions are specifically designed to cause the Accused Products to connect with another device using Wi-Fi Direct protocols in an infringing manner and are a material part of the invention of the '441 patent and are not a staple article of commerce suitable for substantial non-infringing use.

59.     On information and belief, despite having knowledge of the '441 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '441 patent, HP has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. HP's infringing activities relative to the '441 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

60.     SPV has been damaged as a result of HP's infringing conduct described in this Count. HP is, thus, liable to SPV in an amount that adequately compensates SPV for HP's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III
### (INFRINGEMENT OF U.S. PATENT NO. 10,039,144)

61.     Plaintiff incorporates paragraphs 1 through 60 herein by reference.

62.     SPV is the assignee of the '144 patent, entitled "Wireless Base Station and Wireless Communication Terminal and Wireless Communication System" with ownership of all substantial rights in the '144 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

63.     The '144 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '144 patent issued from U.S. Patent Application No. 15/142,258.

64.     HP has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '144 patent in this judicial district and elsewhere in Texas and the United States.

65.     On information and belief, HP designs, develops, manufactures, assembles and markets mobile phones, tablets, laptops, computers, and other devices that support Wi-Fi Direct.

66.     HP directly infringes the '144 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '144 patent.

67.     For example, HP infringes claim 1 of the '144 patent via the Accused Products. The Accused Products comprise the "wireless communication device" of claim 1. For example, the Accused Products connect to Wi-Fi and support Wi-Fi Direct. In Wi-Fi Direct, each Accused Product is enabled to function as a communication terminal that communicates with another device (e.g., another device with Wi-Fi Direct capability) that is enabled to function as a wireless station.

68.     The Accused Products comprise wireless communication circuitry operative to communicate with a wireless station by using (i) a non-authentication connection which does not

require an authentication procedure for connection with the wireless station, or (ii) an authentication connection which requires the authentication procedure for connection with the wireless station. For example, the Accused Products (functioning as a Wi-Fi Direct peer device) establish a connection with another Wi-Fi Direct peer device (i.e., a wireless station) using a connection that does not require authentication or a connection that does require authentication.

69.     The Accused Products comprise control circuitry operative to receive, by using the wireless communication circuitry, profile information from the wireless station with a first communication method prior to the authentication connection starting with a second communication method, the profile information being necessary for the second communication method to communicate with the wireless station. For example, the Accused Products (i.e., Wi-Fi Direct peer devices) receive from another Wi-Fi Direct peer device (i.e., the wireless station), via the first communication method (e.g., P2P), profile information (e.g., channel list and operating channel attributes) necessary for the devices to communicate via the second communication method (e.g., IEEE 802.11).

70.     The Accused Products comprise the control circuitry that is operative to control the wireless communication circuitry to receive a content with the second communication method, and the control circuitry further controls the wireless communication circuitry to receive information that is related to the content with the first communication method. For example, the Accused Products receive content (e.g., WSC Exchange data, such as a Device Password) from another Wi-Fi Direct peer device (i.e., the wireless station), via the second communication method (e.g., IEEE 802.11). And the Accused Products receive information that is related to the content (e.g., WSC IE data, such as a Device Password ID) from the wireless station, via the first communication method (e.g., P2P).

17

71.     The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations.

72.     At a minimum, HP has known of the '144 patent at least as early as the filing date of the complaint. In addition, HP has known about the '144 patent at least as early as October 28, 2021, when it met with SPV to discuss the patents-in-suit. Further, HP has known about the '144 patent since at least September 21, 2021, when HP acknowledged access to a data room providing notice of its infringement. Moreover, HP has been on notice of the '144 patent as a result of previous lawsuits filed by the Plaintiff against competitors of HP and other relevant market participants, such as TCL, Hisense, Acer, ASUS, and LG.

73.     On information and belief, since at least the above-mentioned date when HP was on notice of its infringement, HP has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '144 patent to directly infringe one or more claims of the '144 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, HP does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '144 patent. HP intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to Wi-Fi Direct in the

Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States.

74.    In the alternative, on information and belief, since at least the above-mentioned date when HP was on notice of its infringement, HP has contributorily infringed, under U.S.C. § 271(c), one or more claims of the '144 patent. For example, HP contributes to the direct infringement of such claims by distributors, customers, subsidiaries, importers, and/or consumers that use, import, purchase, or sell the Accused Products. To the extent that the Accused Products do not directly infringe one or more claims of the '144 patent, such products contain instructions, such as source code, that are especially adapted to cause the Accused Products to operate in an infringing manner. Such instructions are specifically designed to cause the Accused Products to connect with another device using Wi-Fi Direct protocols in an infringing manner and are a material part of the invention of the '144 patent and are not a staple article of commerce suitable for substantial non-infringing use.

75.    On information and belief, despite having knowledge of the '144 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '144 patent, HP has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. HP's infringing activities relative to the '144 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

76.    SPV has been damaged as a result of HP's infringing conduct described in this Count. HP is, thus, liable to SPV in an amount that adequately compensates SPV for HP's

infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## **CONCLUSION**

77.     Plaintiff SPV is entitled to recover from HP the damages sustained by Plaintiff as a result of HP's wrongful acts, and willful infringement, in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

78.     Plaintiff has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and Plaintiff is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## **JURY DEMAND**

79.     Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## **PRAYER FOR RELIEF**

80.     Plaintiff respectfully requests that the Court find in its favor and against HP, and that the Court grant Plaintiff the following relief:

1.  A judgment that HP has infringed the Asserted Patents as alleged herein, directly and/or indirectly by way of inducing infringement of such patents;

2.  A judgment for an accounting of all damages sustained by Plaintiff as a result of the acts of infringement by HP;

3.   A judgment and order requiring HP to pay Plaintiff damages under 35 U.S.C. § 284, including up to treble damages as provided by 35 U.S.C. § 284, and any royalties determined to be appropriate;

4.   A judgment and order requiring HP to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

5.   A judgment and order finding this to be an exceptional case and requiring HP to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285; and

6.   Such other and further relief as the Court deems just and equitable.

Dated: September 7, 2022

Respectfully submitted,

/s/ *Patrick J. Conroy*
Patrick J. Conroy
Texas Bar No. 24012448
Jon Rastegar
Texas Bar No. 24064043
**Nelson Bumgardner Conroy PC**
2727 N. Harwood St.
Suite 250
Dallas, TX 75201
Tel: (817) 377-9111
pat@nelbum.com
jon@nelbum.com

John P. Murphy
Texas Bar No. 24056024
**Nelson Bumgardner Conroy PC**
3131 W 7th St
Suite 300
Fort Worth, TX 76107
Tel: (817) 806-3808
murphy@nelbum.com

**Attorneys for Plaintiff**
**Sovereign Peak Ventures, LLC**